THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAYLILY FARMS, INC., et al,

    Plaintiffs,

            v.

DEPARTMENT OF WORKFORCE
DEVELOPMENT et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.
04-11002-GAO

## STATE DEFENDANT'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

The plaintiffs, several Massachusetts corporations who employ temporary seasonal workers on Cape Cod and Martha's Vineyard Island, are seeking injunctive relief in an effort to compel the defendants, the United States Department of Labor, the United States Department of Homeland Security, and the Massachusetts Department of Workforce Development, to continue processing and issuing to them temporary non-agriculture visas ("H-2B visas") even though the Congressionally-mandated numerical cap for such visas has already been met for fiscal year 2004. The plaintiffs contend that the defendants have discriminated against them by not permitting them to apply for the visas more than 120 days before the temporary workers would be needed, which, they allege, prevented them from applying in time to be considered before the cap had been met. Because the role of the Massachusetts Department of Workforce Development (the "state defendant") in the H-2B visa program is primarily ministerial and the state defendant has no authority to either approve the plaintiffs' application for foreign labor

1

certification or to grant H-2B visas, the plaintiffs have no likelihood of success on the merits of their legal claims against the Department of Workforce Development. This Court should therefore deny the plaintiffs' request for injunctive relief and dismiss the plaintiffs' claims against the state defendant.

STATUTORY AND REGULATORY FRAMEWORK

1.    Overview of the H-2B Program.

The H-2B Temporary Labor Certification in Nonagricultural Occupations program ("H-2B program") permits employers to hire foreign workers to come to the United States to perform temporary nonagricultural work. See § 101(a)15(H)(ii)(b) of the Immigration and Nationality Act; 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H-2B classification applies to an alien who is coming temporarily to the United States to perform non-agricultural work of a temporary or seasonal nature,[1] if unemployed persons capable of performing such service or labor cannot be found in this country. 8 CFR § 214.2(h)(1)(ii)(D).

Pursuant to 20 CFR § 655.2, an employer who wishes to bring in foreign workers under the H-2B program must obtain the requisite application forms (ETA 750A & 750B) from the state workforce agency -- here, the Division of Career Services in the Department of Workforce Development -- and file the completed forms with that agency. 8 CFR § 214.2(h)(2)(i)(A). However, because the availability of temporary U.S. workers changes over short periods of time, the U.S. Department of Labor does not allow employers to file applications for temporary labor

---

[1] If the work is of a "temporary" nature, then the worker can apply for a visa to work in the U.S. for up to 364 days for two consecutive years and then cannot reapply for an H-2B visa for another three years. GAL 01-95. If the work is of a "seasonal" nature then the worker can apply for a visa to work in the U.S. every year to work during that season. Id.

certification more than 120 days before a worker is needed because an adequate test of the labor

market cannot be made for a longer period. Department of Labor General Administration Letter

("GAL") 01-95, Procedures for H-2B Temporary Labor Certification in Nonagricultural

Occupations, (November 10, 1994), 60 Fed. Reg. 7216 (February 7, 1995). Once the employer

files the completed forms with the state workforce agency, the state agency reviews the

application to ensure that the employer has exhausted every effort to hire a U.S. worker capable

of performing the temporary services and is offering a wage that would not adversely affect

similarly employed U.S. workers. Affidavit of Alice Sweeney, ¶ 4.

Thus, in conducting its review of an employer's application for temporary labor

certification, the state workforce agency must determine the prevailing wage for such

employment in the local area in order to ensure that the wage being offered is not inappropriate.

20 CFR § 656.40. In addition, if the job offer is less than full-time, or contains unduly restrictive

job requirements, or has terms and conditions of employment which otherwise inhibit the

effective recruitment and consideration of U.S. workers for the job, the state workforce agency

must advise the employer to correct the deficiencies before commencing recruitment. GAL 01-

95. If the job offer is satisfactory, the state workforce agency will then advertise the job for ten

days and require the employer to advertise the job for three days in a forum most appropriate for

the occupation and most likely to bring responses from U.S. workers. Id.

After the recruitment period, if a U.S. worker has not been found to fill the position, the

state workforce agency will forward the application, results of recruitment, and prevailing wage

findings to the United States Department of Labor, Employment and Training Administration,

Boston Region. 20 CFR § 655.3(a). The U.S. Department of Labor will issue the labor

3

certification if it finds that qualified U.S. workers are not available for the job and the terms of the employment will not adversely affect the wages and working conditions of similarly employed U.S. workers. Id. The role of the U.S. Department of Labor, however, is only advisory to the Department of Homeland Security and the United States Attorney General has the sole authority for the final approval or denial of petitions for temporary alien employment.[2] Id.

Regardless of whether the U.S. Department of Labor issues a temporary labor certification to an employer, pursuant to § 214(g)(1)(B) of the Immigration and Nationality Act, the total number of aliens who may be issued H-2B visas or who otherwise may be granted H-2B status during any fiscal year[3] may not exceed 66,000. Immigration and Nationality Act, § 214(g)(1)(B). This year, on March 9, 2004, the United States Citizenship and Immigration Services, Department of Homeland Security, ceased accepting new H-2B visa petitions containing a request for a work start date prior to October 1, 2004, because it had reached the numerical cap for fiscal year 2004.[4] 69 FR 12340-12341 (March 16, 2004). The Department of Homeland Security continues to process, however, petitions containing a request for a work start

---

[2] Although employers must seek certification through the Department of Labor, once the application is certified/approved, the employer must then petition the Citizenship and Immigration Service for a visa. See 20 CFR § 655.3(d). Approval by the Department of Labor does not guarantee a visa issuance because applicants must also establish that they are admissible to the U.S. under provisions of the Immigration and Nationality Act. Id.

[3] The Citizenship and Immigration Service fiscal year is from October 1 through September 30. See 69 FR 12340-12341 (March 16, 2004).

[4] The so-called "dates of need" for Cape Cod and Martha's Vineyard Island were established in order to define the season in which the workers will be employed. The dates of need for H-2B temporary workers on Cape Cod and Martha's Vineyard Island are from March 15 - December 15, 2004. Consequently, the plaintiffs were permitted to seek a labor certification as early as November 15, 2003, four months before the numerical cap for H-2B visas had been met.

4

date on or after October 1, 2004.  Id.

2.    The Limited Role of the State Workforce Agency in the H-2B Program.

The U.S. Department of Labor provides funding to state workforce agencies that have an approved Alien Labor Certification Plan in order to reimburse the state workforce agency for the costs associated with their role in the Alien Labor Certification Program.  Sweeney Affidavit, ¶ 5.  In order to define the state workforce agency's role in the Alien Labor Certification program, the Department of Labor has published a Workforce Systems Letter.  Workforce Systems Letter No.: 04-10.  Sweeney Affidavit, ¶ 5; Exhibit A.  The Workforce Systems Letter outlines the guidelines for the state workforce agency's administration of the grant funds and sets forth the state workforce agency's reporting requirements.  Id.

The state workforce agency has no authority to either approve or deny an employer's application to bring in foreign workers through the H-2B program.  Sweeney Affidavit, ¶ 10. Rather, as a pre-condition to receiving funds, the state workforce agency must agree to assist the U.S. Department of Labor in determining the availability of U.S. workers and the potential adverse effect on wages and working conditions that the admission of alien workers might have on similarly employed U.S. workers before employers can obtain a labor certification.  Sweeney Affidavit, ¶ 6.  The state workforce agency must also agree to assist the U.S. Department of Labor by conducting the Occupational Employment Survey and appropriate agricultural surveys and providing wage determination information to employers wishing to file or update a labor attestation or labor condition application.  Id.  Thus, the requirements and responsibilities of the state workforce agency are as follows: (1) to provide labor certification services to protect job opportunities for U.S. workers and prevent adverse effect on U.S. workers' wages and working

conditions resulting from the employment of aliens; (2) provide labor certification application

forms and conduct certain labor market services necessary for the Secretary of Labor to make

determinations on applications for alien labor certification; and (3) conduct certain labor market

services necessary for the Secretary of Labor. Id.

Under federal regulations, the state workforce agency's specific responsibilities with

respect to the H-2B program are limited; the state workforce agency performs the initial

processing of the applications; conducts special recruitment for U.S. workers; conducts

prevailing wage surveys; determines prevailing wage rates; obtains data needed for making

prevailing practice determinations; submits required reports; and gathers other information

which forms the basis for the U.S. Department of Labor's determinations regarding labor

certifications. 20 CFR 656.21. Moreover, in conducting recruitment for U.S. workers, the state

workforce agency specifically encourages U.S. workers to apply and places advertisements in a

forum designed to reach the maximum number of U.S. workers. Id. In this manner, the state

workforce agency seeks to ensure that employment opportunities for U.S. workers are

maximized. Id.; Sweeney Affidavit, ¶ 8.

## ARGUMENT

## I.    STANDARD FOR PRELIMINARY INJUNCTION

A court must "determine the appropriateness of granting or denying a preliminary

injunction on the basis of a four-part test." Sunshine Development, Inc. v. Fed. Deposit Insur.

Corp., 33 F.3d 106, 110 (1st Cir. 1994). The inquiry requires consideration of (1) the likelihood

of success on the merits; (2) the potential for irreparable injury; (3) the balance of equities (in

particular, the irreparable harm to plaintiff if the injunction does not issue, versus the irreparable

harm to the defendant if the injunction issues); and (4) the effect on the public interest of a grant or denial of the injunction. <u>Narragansett Indian Tribe v. Guilbert</u>, 934 F.2d 4, 5 (1st Cir. 1991). Likelihood of success on the merits is the "sine qua non" for entry of a preliminary injunction. <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993).

## II.   THE PLAINTIFFS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR LEGAL CLAIMS AGAINST THE STATE DEFENDANT BECAUSE THE STATE DEFENDANT HAS NO AUTHORITY TO EITHER APPROVE OR DENY AN EMPLOYER'S APPLICATION TO BRING IN FOREIGN WORKERS THROUGH THE H-2B PROGRAM.

The state defendant has a limited ministerial role in the implementation of the H-2B program. Thus, in order to request a temporary labor certification from the Department of Labor, an employer must first submit a temporary labor certification application to the state defendant for it's review. GAL 01-95; Sweeney Affidavit, ¶ 2. The state defendant does not either approve or deny the application, it merely reviews the application to ensure that there are no unduly restrictive job requirements, that the wage offered would not adversely affect the wages of similarly employed U.S. workers, and that the job has been appropriately advertised in an effort to recruit U.S. workers. GAL 01-95; Sweeney Affidavit, *passim*. Nor does the state defendant have any authority to issue an immigration visa. <u>Id.</u> Because the state defendant does not either approve or deny applications for labor certification or have the authority to issue visas, the plaintiffs fail to state a claim upon which relief can be granted against the state defendant.

Nonetheless, the plaintiffs contend that the defendants have discriminated against them because other employers were allegedly "preferentially allowed to begin applying for H-2B visas on June 1, 2003, while the Plaintiffs were prohibited from commencing their application until November 15, 200[3]." Plaintiffs' Motion for (EMERGENCY) Temporary Restraining Order

7

and Injunctive Relief (Preliminary and Permanent Injunction) <u>AMENDED</u>, ¶ 4. This, however, is simply not the case. Federal procedures direct the state defendant not to accept requests for temporary labor certification filed more than 120 days before a worker is needed. GAL 01-95. The state defendant applies this requirement in an even-handed manner to all employers seeking certification. Sweeney Affidavit, ¶ 4. The plaintiffs here were permitted to begin the application process on November 15, 2003. Plaintiffs' Motion for (EMERGENCY) Temporary Restraining Order and Injunctive Relief (Preliminary and Permanent Injunction) <u>AMENDED</u>, ¶ 4. If they failed to file an application before the numerical cap for H-2B visas was met on March 9, 2004, this was a result of their own assessment of their employment needs and not any action on the part of the state. Thus, the fact that other employers, who were seeking workers for an earlier season, were permitted to begin applying for labor certification on June 1, 2003, is simply a function of the date on which those employers need their workers -- a determination that does not involve the state defendant. Sweeney Affidavit, ¶¶ 4, 11. The plaintiffs cannot show any preferential treatment afforded by the state defendant. <u>See</u> Sweeney Affidavit, ¶ 4. In sum, the plaintiffs simply cannot establish a violation of the equal protection clause on the facts of this case.

The Fourteenth Amendment commands that no person shall be denied equal protection of the laws by any State. U.S. Const. art. XIV. The concept of equal protection requires the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. <u>Reynolds v. Sims</u>, 377 U.S. 533, 535 (1964). The purpose of the clause is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution

through duly constituted agents. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564-65 (2000). When the governmental action relates only to matters of social or economic welfare, however, the law need only rationally relate to a legitimate governmental purpose. <u>Kotch v. Brd. of River Port Pilot Comm'rs</u>, 330 U.S. 552, 556-57 (1947).

Thus, in the area of economics and social welfare, the government does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. <u>Dandridge v. Williams</u>, 397 U.S. 471, 485 (1970). If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' <u>Id.</u>, quoting <u>Lindsley v. Natural Carbonic Gas Co.</u>, 220 U.S. 61, 78 (1911). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." <u>Id.</u>, quoting <u>McGowan v. Maryland</u>, 366 U.S. 420, 426 (1961).

Here it is clear that the 120-day rule set forth in the U.S. Department of Labor's General Administration Letter, GAL 01-95, is constitutionally valid. In fact, the plaintiffs concede as much. Plaintiffs' Motion for (EMERGENCY) Temporary Restraining Order and Injunctive Relief (Preliminary and Permanent Injunction) <u>AMENDED</u>, ¶ 6 ("there is a rational reason to wait 120 days before an employee is needed to test the market in order to have accurate market information."). Nor has there been any discrimination in the application of this rule. To the contrary, the state defendant subjects all temporary seasonal employers to the same 120-day rule. Sweeney Affidavit, ¶ 4. Although employers who submitted their alien labor certification applications after March 9, 2004, are unable to obtain such certifications during the current fiscal year, it is enough that the rule itself is rationally based and free from invidious discrimination.

9

There is no equal protection violation here. Because the plaintiffs cannot establish a likelihood of success on the merits of their equal protection claim, their motion for preliminary injunction should be denied. Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir.1988) (although Court must consider prospect of irreparable harm, balance relevant equities, and determine effect of court's action on public interest, likelihood-of-success inquiry is most dispositive inquiry; if plaintiff cannot demonstrate likelihood of success, equitable relief is not available).

## III.   THE PLAINTIFFS' FAIL TO ESTABLISH AN IRREPARABLE INJURY SUFFICIENT TO WARRANT THE ISSUANCE OF INJUNCTIVE RELIEF.

In their request for emergency injunctive relief, the plaintiffs fail to provide any support for their conclusory assertion that they "are suffering irreparable harm by not having the necessary workforce." Plaintiff's Motion, ¶ 13. The excerpts of articles they cite from various newspapers commenting upon the anticipated shortfall in seasonal labor on Cape Cod and Martha's Vineyard Island do not provide competent evidence that, if additional H-2B visas are not issued, the plaintiffs will suffer irreparable harm. Cf. Commonwealth v. Pope, 392 Mass. 493, 500, 467 N.E.2d 117, 122 (1984) (newspaper articles generally not considered competent evidence of facts stated therein). While the plaintiffs' failure to show a likelihood of success on the merits is sufficient to deny their request for injunctive relief, their motion should also be denied because they have not shown sufficient proof at this time that they will suffer irreparable harm in the absence of an injunction.

## IV.   NEITHER THE BALANCE OF EQUITIES NOR THE INTEREST OF THE PUBLIC FAVORS THE ISSUANCE OF INJUNCTIVE RELIEF

The balance of equities favors the Commonwealth in this case. As noted above, the plaintiffs have failed to establish that they will suffer irreparable harm if their motion for

10

preliminary injunction is not allowed. Moreover, the Massachusetts public has an interest in the even-handed enforcement of the alien labor certification program and in the accurate testing of the labor market to ensure that any available temporary U.S. workers are hired whenever possible. Accordingly, these factors also weigh in favor of denying the plaintiffs' motion for injunctive relief.

CONCLUSION

For the foregoing reasons, the Department of Workforce Development respectfully requests that the plaintiffs' motion for temporary restraining order or, in the alternative, preliminary injunction, be DENIED.

Respectfully submitted,

ALICE SWEENEY, DIRECTOR,
DIVISION OF CAREER SERVICES,
DEPARTMENT OF WORKFORCE
DEVELOPMENT,

By her attorney,

THOMAS F. REILLY
ATTORNEY GENERAL

Susan Paulson, BBO #634714
Assistant Attorney General
Government Bureau
One Ashburton Place, Rm 2019
Boston, Massachusetts 02108
(617) 727-2200, ext. 2080

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on

Date: June 7, 2004

11



THE COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE ATTORNEY GENERAL
ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108-1598

THOMAS F. REILLY
ATTORNEY GENERAL

(617) 727-2200
www.ago.state.ma.us

June 7, 2004

**BY HAND DELIVERY**

Tony Anastas, Clerk
United States District Court, District of Massachusetts
John J. Moakley Federal Courthouse
One Courthouse Way, Suite 2300
Boston, Massachusetts 02110

    Re:   <u>Daylily Farms Inc. et al., v. Elaine L. Chao, U.S. Department of Labor, et al.,</u>
            U.S.D.C. C.A. No. 04-11002 GAO

Dear Mr. Anastas:

      Enclosed for docketing and filing in the above-captioned case, you will find the State Defendant's Opposition to Plaintiffs' Amended Motion for Emergency Temporary Restraining Order and an Affidavit of Alice Sweeney.

      Thank you for your attention to this matter.

                           Very truly yours,

                           Susan Paulson
                           Assistant Attorney General
                           Government Bureau
                           (617) 727-2200, ext. 2080

SP:pob
Enclosure

cc:    Alan R. Finer, Esq.
       Anita Johnson, Esq.