THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAYLILY FARMS, INC., et al, )
) CIVIL ACTION NO.
) 04-11002-GAO
Plaintiffs, )
v. )
)
DEPARTMENT OF WORKFORCE )
DEVELOPMENT et al., )
)
Defendants. )

## AFFIDAVIT OF ALICE SWEENEY

I, Alice Sweeney, hereby state the following:

1. I am the Director for the Career Services Central Operations of the Division of Career Services (DCS) and I am familiar with the H-2B Temporary Labor Certification in Nonagricultural Occupations (hereinafter "H-2B") program.

2. Pursuant to 20 CFR §655.2, an employer who wishes to bring in foreign workers under the H-2B program must obtain the requisite application forms (ETA 750A & 750B) from the State Workforce Agency and file such completed forms with the State Workforce Agency.

3. DCS is the State Workforce Agency that administers the Alien Labor Certification program in Massachusetts. Thus, DCS provides employers with alien labor certification application forms and reviews the completed application forms that the employer submits.

4. At the direction of the U.S. Department of Labor, DCS will not process alien labor certification applications filed more than 120 days before a worker is needed. Department of Labor General Administration Letter ("GAL") 01-95, Procedures for H-2B Temporary Labor Certification in Nonagricultural Occupations, (November 10, 1994), 60 Fed. Reg. 7216 (February 7, 1995). DCS applies this rule to all H-2B visa applications.

5. The U.S. Department of Labor provides funding to state workforce agencies that have an approved Alien Labor Certification Plan in order to reimburse the state workforce agency for the costs associated with their role in the Alien Labor Certification program. The

1

state workforce agency's role in the Alien Labor Certification program is defined by the U.S. Department of Labor and is described in the Department of Labor's Workforce Systems Letter No.: 04-10. Exhibit A.

6. As a pre-condition for receiving funds, the state workforce agency, i.e. DCS, must agree to assist the Department of Labor in determining the availability of U.S. workers and the potential adverse effect on wages and working conditions that the admission of alien workers might have on similarly employed U.S. workers before employers can obtain a labor certification. Exhibit A. The state workforce agency must also agree to assist the Department of Labor by conducting the Occupational Employment Survey and appropriate agricultural surveys and providing wage determination information to employers wishing to file or update a labor attestation or labor condition application. Id. Thus, the requirements and responsibilities of the state workforce agency are as follows: (1) to provide labor certification services to protect job opportunities for U.S. workers and prevent adverse effect on U.S. workers' wages and working conditions resulting from the employment of aliens; (2) provide labor certification application forms and conduct certain labor market services necessary for the Secretary of Labor to make determinations on applications for alien labor certification; and (3) conduct certain labor market services necessary for the Secretary of Labor. Id.

7. The state workforce agency's specific responsibilities with respect to the H-2B program are to perform the initial processing of the applications; conduct special recruitment for U.S. workers; conduct prevailing wage surveys; determine prevailing wage rates; obtain data needed for making prevailing practice determinations; submit required reports; and gather other information which forms the basis for the Department of Labor's determinations regarding labor certifications. 20 CFR 656.21. DCS reviews the alien labor certification application forms to ensure that the employer wishing to bring in a foreign worker has exhausted every effort to hire a U.S. worker capable of performing the temporary services and is offering a wage which would not adversely affect similarly employed U.S. workers.

8. In conducting recruitment for U.S. workers, DCS seeks to maximize employment opportunities for U.S. workers. DCS instructs employers to advertise positions in a newspaper of general circulation for a period of three consecutive days within a defined 10-day period of duration. During that 10-day period the job is posted on the MA JobQuest database, as well as, America's job bank. Respondents to the advertisement are instructed to submit resumes to DCS and DCS reviews and screens all of the resumes. Resumes of qualified U.S. workers are submitted to the employer and the employer must contact that applicant for an interview. The employer must submit the "results of the recruitment" to DCS which includes the hiring of applicants or justification why the applicants do not meet the requirements of the job. The entire recruitment results is included in the package that is forwarded to the U.S. Department of Labor for approval or denial of certification.

9. After reviewing the alien labor certification applications and conducting the recruitment, DCS forwards the applications to the U.S. Department of Labor, Employment and Training Administration, Boston Region pursuant to 20 CFR §655.3(a).

10.     DCS has no authority to either approve or deny an employer's application to bring in foreign workers under the H-2B program.

11.     DCS was not responsible for developing any policy relating to the establishment of so-called "dates of need" for H-2B workers on Cape Cod and Martha's Vineyard Island and has no authority to change any such policy.

12.     DCS acts solely at the behest of the U.S. Department of Labor with respect to the H-2B program.

Signed under the pains and penalties of perjury,

_____          _6-7-04_____
Alice Sweeney                                     Date
Director, Career Services Central Operations
Division of Career Services