THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAYLILY FARMS, INC., et al ) | |
| ) | |
| Plaintiffs ) | |
| ) | CIVIL ACTION |
| V. ) | NO. 04 - 11002 - GAO |
| ) | |
| ELAINE L. CHAO, United ) | |
| States, Department of Labor and ) | |
| Department of Homeland Security,) | |
| Citizenship and Immigration ) | |
| Services ) | |
| ) | |
| Defendants ) | |

**PLAINTIFFS', DAYLILY FARMS, INC., ET AL MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

The purpose of this action is to have the Defendants' administrate the monitoring and approval of H2B Visas (Non-Immigrant Visas for seasonal, peak time and onetime event) delegated by Congress in a manner consistent with the legislation and not to usurp Congressional Authority to set a numerical cap of sixty-six thousand (66,000) visas.

This Civil Action for declaratory relief arises under Article III, Section 2 of the United States Constitution, and its equity jurisdiction in conjunction and alternatively with 28 U.S.C. section 2201, Uniform Declaratory Judgment Act.

Federal Rules of Civil Procedure - Rule 57 - Declaratory Judgments, states in part, "...The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate..."

The method of administration by the Defendants is inequitable, unconstitutional,

1

arbitrary, capricious and contrary to the terms of the legislation that is the basis of its' authority.

The Complaint is not moot since the procedures required by the Defendants have not changed and continue to affect the Plaintiffs.

The Defendants are not entitled to dismissal of the Complaint.

Rule 12(b) Federal Rules of Civil Procedure "... if, on a Motion, asserting the defense to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The content of Steven P. Bucher's declaration is disputed in several areas. Statements contained in the affidavit are opinion, interpretation of law, reference to portions of laws and documents taken out of context and omissions that amount to a biased legal argument that is contrary to the central claim of the Plaintiffs.

Materials outside the pleadings must be submitted to the Court to refute the declaration.

## **LEGAL FRAMEWORK**

The Plaintiffs agree with most of the information contained in the portion of the Defendants memorandum entitled Legal Framework but wish to comment on some points.

The purpose of the "H" temporary worker category for foreign workers, is to give the DHS(USCIS) formerly INS sufficient authority to admit temporary workers. H.R.

Rep. No. 1365, 82nd Cong., 2nd Sess. (1952)

On November 29, 1990, Congress limited the number of aliens to who may be issued visas or otherwise provided H2B nonimmigrant status to 66,000. 8 USC 1184(g)(1).

The DHS (CIS) formerly INS was given the responsibility of monitoring the H2B program. Immigration and Nationality Act of 1990 (IMMACT '90), Pub. L. 101-649, 104 Stat. 4978, 101st Cong., 2nd Sess., section 205(a), (November 29, 1990)(S.358)(H.R. 4300)

The House Report, referring to (IMMAC '90) H.R. Rep. 101-723(I) (1990) suggests that H nonimmigrant visas, DHS(CIS) have "centralize processing" and "shall be issued on a first come, first served basis. There shall be no quarterly or other type of allocation." However, presently the H@B process is a de facto allocation, dependent upon when during each fiscal year the applicant needs to apply.

Congress limited the number of aliens to whom may be issue visas or otherwise provided H2B nonimmigrant status to 66,000. The present justifiable process and the authority for such as argued by DHS-USCIS is as follows:

1. Page 4 of Defendants' memorandum, "The purpose of the "H" temporary worker category for foreign workers, is to give the **DHS sufficient authority to admit (emphasis added)** temporary workers to alleviate labor shortages ..." The affidavit of Steven P. Bucher omits any mention of this authority.

2. Page 4 of Defendants' memorandum, "In 1965, the "H" category in the statute was amended so that alien labor may be **admitted only (emphasis added)** if DOL finds that American labor would not be adversely affected by the entry. Pub. L. No 89-236

3

(1965).

The amendment does not prevent DHS from accepting I-129 Petitions and giving a receipt number. DHS can send a copy of the receipt number to the appropriate state workforce agency SWA a contractor of DOL.

3.  Page 5 of Defendants' memorandum, "DOL regulations require the would-be employer of H2B workers to file an application at the local office of the state employment service." "According to DOL policy the employer is permitted to file a labor certification application only within 120 days before the worker is needed" General Administrative Letter (GAL) 01-95.

4.  Page 6 of the Defendants' memorandum, (footnote) (GAL) 01-95 provided "the SESA now SWA (State Agency) "should return to employers requests for temporary labor certification filed more than 120 days before the worker is needed…"

5.  This is the first step of the H2B multi-agency process. Fifty (50) state agencies are involved. DHS(USCIS) responsible for monitoring the process but is not involved at this stage. "Under DHS regulations, a U.S. employer seeking an H-2B temporary worker may not file a Form I-129 without the required labor certification or non-determination letter from DOL." Declaration of Steven P. Bucher

6.  Once DOL, second step in the process, has certified the application, the employer must file a petition for an H2B nonimmigrant worker visa (Form I-129) with DHS(USCIS) 8 CFR section 214.2(h)(6)(iv)(A)(1) & (2). The USCIS has the responsibility for adjudicating the petition.

The third step in the process. Only on receipt by USCIS does the so-called chronicle order, first come, first serve commence.

## **STATEMENT OF FACTS**

Plaintiffs each applied to DOL for certification that there were insufficient available domestic workers for the positions they wished to fill for the summer 2004 season and that their employment of temporary foreign workers would not adversely affect the wages and working conditions of domestic workers similarly employed. The Plaintiffs sent Labor Certification Applications (LCA) Form 750 to the Commonwealth of Massachusetts, Division of Employment and Training, to determine the need for foreign workers by testing the market. The Commonwealth is the state workforce agency (SWA) formerly SESA that contracts with the Department of Labor to oversee the market testing.

The Commonwealth (SWA) assigned a priority date upon receipt of each application (LCA). The (LCA) required information acceptable to the DOL and SWA including job description, prevailing wage, hours of employment and the period of employment and a letter of need from the applicant. Sometime after the LCA was reviewed and if necessary changes made, the Commonwealth (SWA) sent a letter of instruction on how and when to test the market. The instructions included placing a classified advertisement in the help wanted section of the local newspaper, Cape Cod Times, for three consecutive days, posting at the workplace and interviewing any domestic applicants that sent applications to the SWA, as required, and on to the prospective employer. The prospective employer interviewed applicants who responded to the posting. At the same time the Commonwealth (SWA) posted the position in unemployment offices. After the market testing was complete the LCA applicant

5

provided the Commonwealth (SWA) with a letter of Recruitment Results. The Commonwealth then transferred the result to the Department of Labor.

DOL determined the summer season for Martha's Vineyard began on March 15, 2004. Applications submitted prior to November 15, 2004 would be returned. No application from Martha's Vineyard, Nantucket and Cape Cod, Massachusetts were allowed to be submitted prior to 120 days before the date of need, determined by DOL to be March 15, 2004. A DOL regulation.

On various dates the Plaintiffs received certification of approval on their LCAs from the DOL regional office. The Plaintiffs submitted I-129 Petitions for Nonimmigrant worker to the Vermont Service Center of DHS (USCIS).

On March 9, 2004, DHS (USCIS) announced that it reached the Congressionally mandated cap of 66,000 Petitions for Nonimmigrant (H2B) visas and would not process any received after that date. The Plaintiffs' petitions were received after March 9, 2004 and were returned. A showing of the returns was made at the hearing for temporary restraining orders and are attached hereto.

The DHS is charged by legislation and as indicated by Congressional report to provide a centralized processing system, monitor the H2B process and issue approval or denial adjudications in chronological, first come first serve basis without quarterly or other types of allocation.

The H2B process involves 50 state workforce agencies, several regional divisions of DOL and DHS (USCIS) service centers throughout the United States.

The multi-agency H2B process commenced on June 1, 2003 with a showing of need for foreign workers on October 1, 2003, the beginning of that fiscal year 2004.

6

The Plaintiffs, competing for the same 66,000 visas were prevented from beginning the multi-agency H2B process until November 15, 2003.

## ARGUMENT

### ISSUES

1. Does the Plaintiffs' amended complaint state a claim upon which relief can be granted and the Defendants' Motion to Dismiss denied?

2. Should the Defendants' Motion to Dismiss be treated as a Motion for Summary Judgment?

3. Did HSD - USCIS' failure to properly discharge its legislative mandate result in a process that is arbitrary, capricious or contrary to law?

4. Did HSD - USCIS' failure to monitor the H2B process when combined with DOL'S rules, regulations, policies and determinations result in a process that is arbitrary, capricious or contrary to law?

5. Is the multi-agency H2B process irrationally monitored and administered resulting in statutory and constitutional violation?

**Does the Plaintiffs' amended complaint state a claim upon which relief can be granted and the Defendants' Motion to Dismiss denied?**

**Yes.** The Plaintiffs' amended complaint states claims upon which relief can be granted. The Plaintiffs' allege that the Defendants failed to properly discharge its duty and caused harm to them. There was no rational basis for the Defendants' actions. The Plaintiffs claim for declaratory relief arises under Article III, Section 2 of the United States Constitution, and its equity jurisdiction in conjunction and alternatively with 28 U.S.C. section 2201, Uniform Declaratory Judgment Act.

The Defendants Motion to Dismiss should be denied.

## Should the Defendants' Motion to Dismiss be treated as a Motion for Summary Judgment?

Yes. Rule 12(b) Federal Rules of Civil Procedure "... if, on a Motion, asserting the defense to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The content of Steven P. Bucher's declaration is disputed in several areas. Statements contained in the affidavit are opinion, interpretation of law, reference to portions of laws and documents taken out of context and omissions that amount to a biased legal argument that is contrary to the central claim of the Plaintiffs.

Materials outside the pleadings must be submitted to the Court to refute the declaration.

The Defendant' Motion to Dismiss should be treated as a Motion for Summary Judgment.


1. **Did DHS - USCIS fail to properly discharge its legislative mandate and result in a process that is arbitrary, capricious or contrary to law?**

2. **Did HSD - USCIS' failure to monitor the H2B process when combined with DOL'S rules, regulations, policies and determinations result in a process that is arbitrary, capricious or contrary to law?**

3. **Is the multi-agency H2B process irrationally monitored and administered resulting in statutory and constitutional violation?**

Yes. Yes. Yes. DHS-USCIS was delegated authority by legislation and as

indicated by Congressional report to monitor the H2B process, create centralized processing of the H2B process, and "shall be issued on a first come, first served basis. There shall be no quarterly or other type of allocation." The mandate clearly requires issuance on a first come, first serve basis, and without seasonal allocation. Therefore clearly, the Department must allow all applicants the right to apply concurrently, regardless of any other constraints upon the process.

On November 29, 1990, Congress limited the number of aliens to who may be issued visas or otherwise provided H2B nonimmigrant status to 66,000. 8 USC 1184(g)(1). This constraint is irrelevant to the process of first come, first serve processing, so long as the Department does not focus on admissions, as it has. The application process is not to be dependent on the necessary input from the Dept. of Labor to allow admission.

In addition to previous authority to admit (approve) temporary workers, DHS (CIS) formerly INS was given the responsibility of monitoring the H2B program. Immigration and Nationality Act of 1990 (IMMACT '90), Pub. L. 101-649, 104 Stat. 4978, 101st Cong., 2nd Sess., section 205(a), (November 29, 1990)(S.358)(H.R. 4300)

The House Report, referring to (IMMAC '90) H.R. Rep. 101-723(I) (1990) suggests that H nonimmigrant visas will have "centralized processing" and "shall be issued on a first come, first served basis. There shall be no quarterly or other type of allocation." DHS (CIS) working with DOL in the multi-agency H nonimmigrant visa process has created a "de facto" seasonal allocation

Defendants, DHS and DOL failed to comply with the law and intent of Congress and DHS of its own Operating Instruction by having several Service Centers processing

9

petitions instead of one centralized processing center and by creating a de facto "seasonal allocation" that artificially precludes all employers from filing their I-129 Petition at the same time, preventing actual chronological processing.

DHS can accept I-129 Petitions at any time and give a receipt number, as it presently does. DHS can send a copy of the receipt number to the appropriate state agency (DOL). After DOL, according to its standards, allows or denies need and DHS has its own review, DHL can approve or deny admission. DHS has an accurate and centralized system of numbering the visa petitions and monitoring the H2B program as mandated by the legislation. DHS would be in compliance with the legislation.

Respectfully Submitted,

_____
Alan R. Finer, Esq.
Attorney for the Plaintiffs
B.B.O. No. 165460 - Mass.
P. O. Box 2367
Vineyard Haven, MA 02568
Phone: 508/693-5062
Fax: 508/693-3681

Certification of Service

I hereby certify that I have served the foregoing upon Anita Johnson, counsel for Defendants, by personal delivery this 1st day of November, 2004.

_____
Alan R. Finer